21345

SOUTH CAROLINA ELECTRIC AND GAS COMPANY, Appellant,
v. The PUBLIC SERVICE COMMISSION of South Carolina,
Daniel R. McLeod, as Attorney General of South Carolina, Mid-
lands Welfare Rights Organization, People Are Coming Sponsor-
ing Committee, Roy W. Smith, Holly Hill Lumber Company, Inc.,
and Gifford-Hill Company, Inc., Defendants, The Public Service
Commission of South Carolina Daniel R. McLeod, as Attorney
General of South Carolina, Midlands Welfare Rights Organization,
People Are Coming Sponsoring Committee, and Roy W. Smith are
Respondents.

(272 S. E. (2d) 793)

*Hubert E. Long,* Lexington and *Patricia T. Marcotsis* and *James B. Richardson, Jr.,* Columbia, *for app*ellant.

*Robert T. Bockman, Arthur G. Fusco, Atty. Gen., Daniel R. McLeod, Asst. Atty. Gen., James W. Johnson, Jr.* and *Robert Guild,* Columbia; *Tom Turnipseed,* West Columbia, *for respondents.*

*Roy W. Smith, pro se.*

December 8, 1980.

NESSS, Justice:

The critical question in this appeal is whether the South Carolina Public Service Commission has authority to require a public utility to make a general refund to its retail customers. We conclude it does not.

Appellant South Carolina Electric & Gas Company (SCE&G) was ordered by the Public Service Commission to refund more than seven million dollars to its retail electric customers as a result of the interchange of power during the first six months of 1976 and 1977. The "interchange of power" is the sale and purchase of energy between SCE&G and other energy producers.[1]

---

[1] During the first six months of 1976, SCE&G purchased power at a cost of 3.4 million dollars; during the same period in 1977, SCE&G sold energy for 4.2 million dollars. The Commission's seven plus million dollar refund represent the percentage of SCE&G's business devoted to retail sales (92.6%).

The circuit court affirmed the refund order of the Commission. We reverse.

Our scope of review of Commission orders subsequently affirmed by the circuit court is limited. Findings of the Commission are presumptively correct, and have the force and effect of law. They will not be reversed by us unless they are without evidentiary support embody caprice or error as a matter of law. *Southern Bell Telephone and Telegraph Company v. Public Service Commission,* 270 S. C. 590, 244 S. E. (2d) 278 (1978) ; *Greyhound Lines, Inc. v. S. C. Public Service Commission,* —S. C. ——, 262 S. E. (2d) 18 (1980).

In affirming the refund order, the circuit court held the Commission acted within the scope of its general powers set forth in S. C. Code § 58-27-140 (1976). We disagree.

Section 58-27-140 provides, *inter alia,* that the Commission may: "[a]scertain and fix just and reasonable standards, classifications, regulations, practices or services to be furnished . . . by any or all electrical utilities." While the Commission is vested with broad power to carry out its responsibilities to the public and to the utilities, that authority is not unlimited. In *Piedmont & Northern Railway Co. v. Scott, et al.,* 202 S. C. 207, 24 S. E. (2d) 353 (1943), we recognized that as creatures of statute, regulatory bodies are possessed of only those powers which are specifically delineated :

"As applied to both State (citation omitted) and Federal (citation omitted) legislation creating regulatory bodies to govern transportation, the Supreme Court of the United States has pointed out that *asserted powers are not to be derived from mere inference.* They must be founded upon language in the enabling acts which admits (*sic*) of no other reasonable construction.

"Such bodies, being unknown to the common law, and deriving their authority wholly from constitutional statutory

provisions, will be held to *possess only* such powers as are conferred expressly or by reasonably *necessary* implication, or such as are merely incidental to the powers expressly granted. See 51 C. J. 36, 37, where among other things it is said: 'Any reasonable doubt of the existence in the Commission of any particular power should ordinarily be resolved against its exercise of the power.'" (Emphasis supplied.) 202 S. C. at 223-224, 24 S. E. (2d) at 360.

Our legislature has empowered the Commission to prescribe refunds in *only* two specific instances. Pursuant to Code § 58-27-880, it may order a refund for the difference between new rates under bond and those ultimately found to be just and reasonable by the Commission. Additionally, the Commission may order a reparation for a past charge in excess of the applicable rate under Code § 58-27-960. Neither of those situations is present here.

We are not persuaded by the fact the Commission referred to the refund here as an adjustment for extraordinary operating expenses. Semantics aside, the Commission's action constituted retroactive rate-making. The rates for 1976 and 1977 were set and approved as reasonable by the Commission, yet in its refund order, the Commission sought to reduce those past-approved rates. Rate-making is a prospective rather than a retroactive process.

Here, appellant's retail customers were paying rates which had been previously approved by the Commission. "[N]o order for the payment of reparation upon the ground of unreasonableness shall be made by the Commission in any instance wherein the rate—has been authorized by law." S. C. § 58-27-960 (1976). The Commission simply does not have any implied power to award refunds in the nature of reparations for past rates or charges; such power must be expressly conferred by statute. *Hope Natural Gas Co. v. Federal Power Commission,* 196 F. (2d) 803 (4th Cir. 1952); *Atlantic Refining Co. v. Public*

*Service Commission,* 360 U. S. 378, 79 S. Ct. 1246, 3 L. Ed. (2d) 1312 (N. Y. 1959); *New Rochelle Water Co. v. Public Service Commission,* 31 N. Y. (2d) 397, 340 N. Y. S. (2d) 617, 292 N. E. (2d) 767 (1972).

The result reached here may initially appear unjust to the retail customer and unduly generous to SCE&G. This is not the case. The crux of this issue is the firm principle that rate-making is prospective rather than retroactive. The Commission has no more authority to require a refund of monies collected under a lawful rate than it would have to determine that the rate previously fixed and approved was unreasonably low, and that the customers would thus pay the difference to the utility.

Rather than engaging in retroactive rate-making, the proper approach for the Commission is to consider these extraordinary monies in setting the test period operating experience when a future rate increase is requested. This method falls within the parameters of the Commission's rate-making authority; the ordering of a general refund does not.

As the legislature has expressly authorized refunds in two specific instances, it is both reasonable and logical to conclude that no general authority to direct refunds was intended to be placed in the Commission. We conclude the Commission exceeded its statutory power in ordering SCE&G to refund more than seven million dollars to its retail customers, and the trial court erred in affirming the order.

Respondents Midlands Welfare Rights Organization, People Are Coming, and Roy W. Smith's additional sustaining ground was the subject of a previous appeal which was abandoned, and is without merit. In view of our disposition of the case, it is unnecessary to reach appellant's remaining exceptions.

We reverse the order of the circuit court, thereby setting aside the commission's refund order.

Reversed.

LEWIS, C. J., and LITTLEJOHN and HARWELL, JJ., concur.

GREGORY, J., not participating.