660 S.E.2d 260

**Jane DOE, Claimant, Petitioner**

v.

**SOUTH CAROLINA DEPARTMENT OF DISABILITIES AND SPECIAL NEEDS, Employer, and State Accident Fund, Carrier, Respondents.**

No. 26465.

Supreme Court of South Carolina.

Heard Dec. 5, 2007.

Decided March 24, 2008.

Rehearing Denied May 7, 2008.

---

Edward L. Graham, of Graham Law Firm, P.A., of Florence, for petitioner.

T. McRoy Shelley, III, of Rogers, Townsend & Thomas, PC; and Cynthia B. Polk, all of Columbia, for respondents.

Justice MOORE:

We granted a writ of certiorari to review the Court of Appeals' decision in this workers' compensation case.[1] We reverse.

## FACTS

In 1979, petitioner (Claimant) began employment as a licensed practical nurse (LPN) with respondent South Carolina Department of Disabilities and Special Needs (Department). Claimant worked at a Department facility that housed patients in various units. She was the only LPN on first-shift duty in her unit. It was her responsibility to give basic patient care and administer medications.

During the spring of 1997, Department began downsizing the facility. Higher functioning patients were moved to community homes and the remaining patient units were consolidated. As a result, the patient population in Claimant's unit changed from being a passive group to a mixed group of passive and aggressive patients. The record indicates Claimant's unit went from being "a fairly pleasant unit to work in" to being "kind of a dumping ground" where none of the other nurses wanted to work.

The level of noise and violence in Claimant's unit increased dramatically in the spring of 1997. With the combination of patients, the aggressive patients attacked the passive ones and Claimant was forced to intervene. Patient and staff injuries increased significantly. The number of reported incidents in Claimant's unit increased from eleven in March 1997 to 128 in May 1997.[2] Claimant suffered a number of minor physical injuries, including having feces smeared in her face.

After the spring of 1997, Claimant began having problems with depression. She received psychiatric care, including

---

1. 364 S.C. 411, 613 S.E.2d 785 (Ct.App.2005).

2. The number of incidents decreased in June 1997 to 87 and continued declining until the fall of 1997.

medication and electro-convulsive treatment, and was hospitalized for severe depression in 1998. Dr. Lowe gave his medical opinion that Claimant's depression was caused by her job situation. He noted that Claimant was previously a well-integrated and functioning person and her sense of self-worth declined when her work situation fell apart. Claimant finally resigned in June 1998 as a result of her inability to work.

Claimant filed this claim for workers' compensation benefits alleging a stress-related mental injury.[3] The single commissioner denied the claim. His findings were adopted by the appellate panel of the full Commission (hereinafter "the Commission"). The circuit court found these findings were unsupported by substantial evidence and reversed. The Court of Appeals reversed the circuit court's order and reinstated the Commission's ruling that Claimant was not entitled to benefits.

## ISSUE

Is there substantial evidence to support the Commission's decision regarding causation?

## DISCUSSION

Our standard of review requires that we determine whether the circuit court properly found the Commission's findings of fact are not supported by substantial evidence in the record. *Baxter v. Martin Bros., Inc.*, 368 S.C. 510, 630 S.E.2d 42 (2006).

Mental or nervous disorders are compensable provided the emotional stimuli or stressors are incident to or arise from unusual or extraordinary conditions of employment. *Powell v. Vulcan Materials Co.*, 299 S.C. 325, 384 S.E.2d 725 (1989) (adopting analysis of *Stokes v. First Nat'l Bank*, 298 S.C. 13, 377 S.E.2d 922 (Ct.App.1988)). In *Shealy v. Aiken County*, 341 S.C. 448, 535 S.E.2d 438 (2000), we surveyed different approaches to determining what constitutes an "unusual and extraordinary" condition of employment. We concluded the

---

3. Claimant also alleged mental injury stemming from physical injuries she sustained on the job. This claim was denied and is not an issue here.

standard to be applied is whether the work conditions at issue were unusual compared to the particular employee's normal strains. 341 S.C. at 457, 535 S.E.2d at 443 (*citing* 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 44.05(4)(d)(i) (1999)).

Here, the commissioner found there were no extraordinary or unusual conditions in Claimant's employment. He concluded it was not unexpected that patients would be moved from one facility to another, that workers would be subjected to aggressive behavior from patients, or that the amount of care needed by patients would change. The circuit court found the commissioner's findings, adopted by the full Commission, were unsupported by substantial evidence. The court focused on the fact that the mix of passive and aggressive patients was an extraordinary and unusual condition in Claimant's employment and concluded this caused Claimant's stress-related mental injury. We agree with the circuit court's analysis.

■ The record indicates that in the spring of 1997, with the new mix of passive and aggressive patients in Claimant's unit, behavior problems escalated because of the "domino effect" created when an aggressive patient acted out. Claimant had never before worked with a mix of passive and aggressive patients. No other unit had a mix of passive and aggressive patients. In fact, Department made changes after a DHEC survey criticized Department for housing diverse patients together.

The Court of Appeals reversed the circuit court, finding substantial evidence in the record that supported the Commission's conclusion there were no extraordinary and unusual conditions in Claimant's employment. The Court of Appeals relied on the testimony of Claimant's two co-workers, Tenia Rae Allen and Kim Willis. A review of the record, however, indicates that the testimony relied upon is taken completely out of context and does not support the Court of Appeals' conclusion.

First, the Court of Appeals noted the testimony of Tenia Rae Allen, a nurse supervisor, stating that it was not unusual for nurses to deal with aggressive patients and nurses were injured even before aggressive patients were transferred to Claimant's unit. Nurse Allen never stated that it was usual

for a nurse to deal with a mix of passive and aggressive patients. In fact, she testified that Claimant's unit became "pretty chaotic" with the new mix of patients and there was a significant increase in violent behavior even among the patients who formerly were fairly well-controlled. She observed that the change in Claimant's unit was "pretty dramatic," and "yes, I think it could really depress somebody to be there." Other units housed only volatile patients but were smaller units and the staff was used to handling those patients. As a whole, Nurse Allen's testimony supports the conclusion that the mix of passive and aggressive patients in Claimant's unit was an extraordinary and unusual condition compared to the normal strains of Claimant's employment.

The Court of Appeals also noted the testimony of Nurse Willis that, in her experience, there are always patients who are harder to deal with, she expects changes in the types of patients she deals with, and physical confrontation with patients is not unusual. Nurse Willis, however, never discussed caring for a mixed group of passive and aggressive patients. She did say that Claimant's unit had an increase in patients with behavioral problems, including one patient who screamed continuously, and that the difference in caring for "low level" and "high level" patients was a substantial change.

Finally, the Court of Appeals observed that Claimant had non-work related stressors, including a prior bout with depression in 1980 and her father's cancer and death in December 1997, that "could impact her mental injury." There is no support in the record for the conclusion that any of these outside factors caused or even contributed to Claimant's disability. The only evidence of causation is that Claimant's mental injury was caused by her stress at work as stated by Dr. Lowe. Moreover, a history of pre-existing depression does not preclude workers' compensation benefits for a mental-mental injury. *See Ellison v. Frigidaire Home Prods.*, 371 S.C. 159, 638 S.E.2d 664 (2006) (an injured claimant is entitled to benefits for disability arising from a permanent impairment in combination with a pre-existing impairment if the combined effect results in a substantially greater disability).

## CONCLUSION

We find no substantial evidence in the record to support the Commission's denial of benefits. Accordingly, we remand for

the Commission to award benefits based on Claimant's disability arising from her mental-mental injury.

WALLER, J., and Acting Justice DOYET A. EARLY, III, concur.

TOAL, C.J., concurring in a separate opinion.

PLEICONES, J., dissenting in a separate opinion.

Chief Justice TOAL, concurring:

I concur in the majority's decision to reverse this case, but I write separately because I would resolve the case on different grounds. In my view, two of the tribunals below committed similar errors of law in failing to properly apply the standard for evaluating a workers' compensation claim for mental injuries brought about by emotional stress or stimuli. Accordingly, I would reverse this case without determining whether the lower courts' findings have evidentiary support.

The reasoning of the single commissioner shares a fatal flaw with that employed by the court of appeals in reinstating the single commissioner's decision. In my view, that fatal flaw is the focus on the ordinary aspects of Petitioner's employment to the exclusion of an examination of the extraordinary, and the consequent use of those ordinary aspects to support the conclusion that Petitioner's injury is not compensable. In *Stokes v. First Nat'l Bank,* the court of appeals adopted the view that mental injuries are compensable if, as in heart attack cases, the mental injury is induced either by physical injury or by unusual or extraordinary conditions of employment. 298 S.C. 13, 21, 377 S.E.2d 922, 926 (Ct.App.1988). We affirmed that decision, noting:

> "injury by accident" ... has been construed to mean not only an injury the means or cause of which is an accident, but also an injury which is itself an accident; that is, an injury occurring unexpectedly from the operation of internal or subjective conditions, without the prior occurrence of any external event of an accidental character ... [i]n determining whether something constitutes an "injury by accident" the focus is not on some specific event, but rather on the injury itself.

*Stokes v. First Nat'l Bank,* 306 S.C. 46, 49–50, 410 S.E.2d 248, 250 (1991).

In my view, both the single commissioner and the court of appeals failed to consider whether the changed conditions of Petitioner's employment were, for her, unusual or extraordinary, and similarly failed to evaluate how the changed conditions affected Petitioner. I believe this was error under *Stokes,* and based on this error of law, I would reverse.

Justice PLEICONES, dissenting:

I respectfully dissent. I believe the Court of Appeals correctly held that the Commission's decision was supported by substantial evidence, and I would affirm the denial of benefits to Claimant.

Because we granted certiorari to review a decision of the Court of Appeals, our standard of review requires us to determine whether the Court of Appeals properly held that the Commission's findings were supported by substantial evidence in the record.[4]

While I am sympathetic to Claimant's struggle with depression, I cannot find error with the Court of Appeals' conclusion. Claimant was an experienced LPN whose patients suffered from severe mental retardation and cognitive disabilities. The Department produced sufficient evidence to show that: (a) the change in the type of patients under Claimant's care was neither unexpected nor unusual; (b) Claimant was trained to handle aggressive patients; and (c) although unfortunate, it was not unusual for Department nurses to be subjected to aggressive and sometimes violent behavior. Despite the fact that Claimant presented ample evidence to support her position, the Commission's findings must be upheld if supported by substantial evidence. *See Shealy v. Aiken County,* 341

---

4. Under the Administrative Procedures Act, we may not substitute our judgment for that of a state agency as to the weight of evidence on questions of fact, but we may reverse or modify decisions which are clearly erroneous in view of the substantial evidence on the whole record. *Welch Moving and Storage Co., Inc. v. Pub. Serv. Comm'n of S.C.,* 301 S.C. 259, 261, 391 S.E.2d 556, 557 (1990). *Baxter,* cited by the majority as stating the applicable standard of review, does not apply to this case. *Baxter* involved a certified appeal directly from the circuit court pursuant to Rule 204, SCACR.

S.C. 448, 455, 535 S.E.2d 438, 442 (2000) (substantial evidence is not evidence viewed solely from one side; it is evidence, when the whole record is considered, that would allow reasonable minds to reach the conclusion the Commission reached).

The Commission found that Claimant was not exposed to unusual and extraordinary conditions in her employment, and in light of the entire record, this conclusion is tenable. Accordingly, I would affirm the Court of Appeals because the Commission's findings are supported by substantial evidence.