22048

Irvin D. PARKER, Consumer Advocate of South Carolina, Appellant, v. SOUTH CAROLINA PUBLIC SERVICE COMMISSION and Southern Bell Telephone and Telegraph Company, Respondents.

(314 S. E. (2d) 148)

Supreme Court

*Steven W. Hamm, Ronald W. McKinney* and *M. Elizabeth Chastain,* Columbia, *for appellant.*

*Arthur G. Fusco, C. Dukes Scott, William F. Austin* and *A. Camden Lewis, Austin & Lewis;* and *Fred A. Walters,* Columbia, and *Hubert F. Owens,* Marietta, Ga., *for respondents; Robert W. Sterrett, Jr.,* Atlanta, Ga., *of counsel.*

February 28, 1984.

NESS, Justice:

This is a telephone rate increase case. Appellant (Irvin D. Parker, Consumer Advocate) contends the trial court erred in sustaining respondent's (Public Service Commission): (1) allocation of 4.9 million dollars of the approved rate increase between two service components of co-respondent's (Southern Bell) system; and (2) inclusion in rate calculations of $17,800 of charitable contributions expenses assigned to Southern Bell by its then parent company, AT&T. We affirm.

■ Our scope of review of Commission orders subsequently affirmed by the circuit court is limited. Findings of the Commission are presumptively correct and will not be reversed unless they are without evidentiary support or embody caprice as a matter of law. *Southern Bell v. The Public Service Commission,* 270 S. C. 590, 244 S. E. (2d) 278 (1978); *South Carolina Electric & Gas Company v. The Public Service Commission,* 275 S. C. 487, 272 S. E. (2d) 793 (1980).

■ Appellant first challenges the trial court's conclusion that the Commission properly allocated 4.9 million dollars of the rate increase between the "Basic Service" and "Supplemental Service" components of the Southern Bell system.

In August 1979, Southern Bell applied to the Public Service Commission for a general telephone rate increase of 35.9 million dollars. 13.1 million dollars of this increase was to be allotted to "Supplemental Services." In January 1980, after conducting extensive hearings, the Commission approved a general rate increase of 21 million dollars, specifically allocating 8.1 million dollars to "Supplemental Services." Appellant argues that in order to comply with the principles of "residual

pricing,"[1] the method used by the Commission to determine rate allocation among the respective components of the Southern Bell system, 13.1 million dollars of the revenue generated from the modified rate increase, rather than 8.1 million dollars, must be distributed to "Supplemental Services."[2] We disagree.

■ In fulfilling its obligation to balance the interests of a public utility and the often competing interests of the intervenors in a complex rate proceeding, the Commission is empowered to utilize its discretion and expertise in setting "just and reasonable rates." S. C. Code Ann. §§ 58-3-140; 58-9-210; 58-9-570; 58-9-1450.

■ When reviewing the Commission's performance of this function, we will presume its findings of fact are correct, and its order reasonable and valid. *Petroleum Transportation, Inc. v. The Public Service Commission*, 255 S. C. 419, 179 S. E. (2d) 326 (1971); *Chemical Leaman Tank Lines, Inc. v. The South Carolina Public Service Commission*, 258 S. C. 518, 189 S. E. (2d) 296 (1972).

Although the 8.1 million dollar allotment for "Supplemental Services" fell short of the amount originally requested, the Commission determined it to be reasonable in light of the fact that only 60% of the original rate proposal was authorized.[3] We recognize that the Commission's interpretation of the evidence on this issue is not indisputable, but we "cannot substitute [our] judgment for that of the Commission upon a question as to which there is room for a difference of intelligent opinion. . . ." *Petroleum Transportation, Inc.*, 255 S. C. 419 at 425, 179 S. E. (2d) 326 at 329 (1971). The interpretation

---

[1] Residual pricing is the method of allowing a general increase in rates among the several categories of service by first assigning the additional revenues granted by the rate increase to all categories other than "Basic Service." Rates for discretionary services are required to cover their current costs and, where possible, provide an additional contribution to the total revenue need. Once the discretionary categories are priced, at least at current cost, the remainder of the general rate increase (i.e., the residual portion) is assigned to "Basic Services."

[2] Appellant contends approximately 4.9 million dollars should be diverted from the funds allocated to "Basic Services" to make up for the alleged deficit in the "Supplemental Services" distribution.

[3] The 8.1 million dollars subsequently allotted for "Supplemental Services" is approximately 60% of the 13.1 million dollar figure initially designated for this component of Southern Bell services.

and weighing of the evidence is clearly a function within the province and discretion of the Commission. *St. Paul Area Chamber of Commerce v. Minnesota Public Service Commission,* 312 Minn. 250, 251 N. W. (2d) 350 (1977). We hold the trial court properly sustained the Commission's determinations as to apportionment of the rate increase.

Appellant also claims the trial court erroneously sustained the Commission's determination that the inclusion in rate-making calculations of a $17,800 charitable expense item allocated to Southern Bell by its then parent company, AT&T, constituted *de minimis* error.

In *Southern Bell, supra,* we recognized that the precedential value of our rulings, rather than their effect on the particular rate issue, was of significant importance when considering alleged errors in rate-making proceedings. Our determination of this issue would have no precedential value, however, as subsequent to the trial court's determination of this issue, the legislature amended S. C. Code Ann. § 58-9-320 (1983 supplement) to effectively prohibit the inclusion of a parent corporation's charitable expense contribution in rate-making calculations. We hold this statutory amendment renders appellant's contention moot.

Affirmed.

LEWIS, C. J. and LITTLEJOHN, GREGORY and HARWELL, JJ., concur.