23764

Steven W. HAMM, Consumer Advocate for the State of South Carolina, Respondent v. PUBLIC SERVICE COMMISSION OF SOUTH CAROLINA, South Carolina Pipeline Corporation, and South Carolina Electric & Gas Company, Appellants; PIEDMONT NATURAL GAS COMPANY, INC., Respondent v. PUBLIC SERVICE COMMISSION OF SOUTH CAROLINA, South Carolina Pipeline Corporation, and South Carolina Electric & Gas Company, Appellants; SOUTH CAROLINA ENERGY USERS COMMITTEE, Respondent v. PUBLIC SERVICE COMMISSION OF SOUTH CAROLINA, South Carolina Pipeline Corporation, and South Carolina Electric & Gas Company, Appellants.

(425 S.E. (2d) 28)

Supreme Court

*Commission Counsel Marsha A. Ward* and *Gayle B. Nichols,* Columbia, *for appellant Public Service Com'n of South Carolina.*

*Belton T. Zeigler,* of *Lewis, Babcock & Hawkins; Corporate Counsel H. Thomas Arthur; Mitchell M. Willoughby* and *Braxton Craig Collins,* Columbia, *for appellant South Carolina Pipeline Corp.*

*Robert T. Bockman* and *Elizabeth F. Mallin,* of the *McNair Law Firm, P.A.,* Columbia, *for appellant South Carolina Elec. & Gas Co.*

*South Carolina Dept. of Consumer Affairs Counsel Steven W. Hamm, Raymon E. Lark, Jr.,* and *Elliott F. Elam, Jr.,* Columbia, *for respondent Consumer Advocate.*

*Rex L. Carter* and *Jefferson V. Smith, Jr.,* of *Carter, Smith, Merriam, Tapp, Rogers & Traxler,* Greenville, and *Jerry W.*

*Amos,* of *Brooks, Pierce, McLendon, Humphrey & Leonard,* Greensboro, N.C., *for respondent Piedmont Natural Gas Co., Inc.*

*Arthur G. Fusco,* of *Sherill and Rogers, P.C.,* Columbia, *for respondent South Carolina Energy Users Committee.*

*Corporate Counsel Miriam A. Swydan* and *David J. Muchow,* Arlington, Va., and *Michael S. Church,* of *Turner, Padget, Graham & Laney, P.A.,* Columbia, *for amicus curiae The American Gas Ass'n.*

Heard Feb. 3, 1992; Decided Dec. 14, 1992.

Reh. Den. Jan. 20, 1993.

FINNEY, Judge:

This is an appeal from a circuit court order reversing and remanding orders of the South Carolina Public Service Commission, which permitted a levelized surcharge based upon a combination of both the volumetric and deficiency-based systems to recover from retail gas customers take-or-pay charges incurred at the wholesale level. We affirm in part and reverse in part.

To compensate the wholesaler for risks involved in the merchandising of natural gas, the retailer agrees to take, or pay for if not taken, a minimum quantity of gas. These take-or-pay (TOP) provisions operate to compensate wholesalers for exclusive commitments of natural gas reserves to a specific sales contract and serves to allocate the risks between the parties.

On September 23, 1988, Appellant South Carolina Pipeline Corporation (Pipeline) filed an application with Appellant South Carolina Public Service Commission (Commission) for approval of a charge to be added to its customers' monthly cost of gas to empower Pipeline to recover TOP costs paid to its wholesale natural gas supplier.

Subsequently, Appellants South Carolina Electric & Gas Company and Respondents Piedmont Natural Gas Company, Inc. (Piedmont), South Carolina Energy Users Committee (SCEUC), and Steven W. Hamm, Consumer Advocate for the State of South Carolina (Consumer Advocate), were permitted to intervene. Thereafter, the American Gas Association was allowed to file an Amicus Curiae brief.

On April 3-6, 1988, the Commission conducted an evidentiary hearing during which the two controlling issues of this appeal were raised. First, how much, if any, of TOP costs should Pipeline be permitted to recover from its customers. Second, if permitted, by what method should TOP costs be allocated among Pipeline's customers. On May 31, 1988, the Commission issued Order No. 89-520 in which it approved the implementation of levelized billing on or after June 1, 1989, and imposed a collection methodology. Respondents separately petitioned for rehearing, and on July 12, 1988, by Order No. 89-703, the Commission denied a rehearing and clarified certain determinations in Order No. 89-520.

Respondents petitioned for judicial review, and the cases were consolidated for hearing. Pursuant to SCEUC's motion to stay portions of Orders Nos. 89-520 and 89-703, the circuit court stayed implementation of a deficiency-based collection methodology pending issuance of a final order after a hearing on the merits of the case. After considering briefs and hearing oral arguments, the circuit court reversed the Commission orders and remanded the case based upon its finding that the decision of the Commission was not supported by the evidence and was arbitrary and capricious as a matter of law. This appeal followed.

An appeal from action of the Commission is governed by the provisions of the South Carolina Administrative Procedures Act, S.C. Code Ann. § 1-23-310, *et seq.* (1986), as amended, and such action must be sustained if supported by substantial evidence. *Hamm v. American Telephone & Telegraph Co.*, 302 S.C. 210, 394 S.E. (2d) 842 (1990); *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 276 S.E. (2d) 304 (1981). The Court cannot substitute its judgment for that of the Commission upon a question as to which there is room for a difference of intelligent opinion. *Hamm v. American Telephone & Telegraph Co., supra; Chemical Leaman Tank Lines v. South Carolina Public Service Comm'n*, 258 S.C. 518, 189 S.E. (2d) 296 (1972). The burden is on the respondents to show convincingly that the orders of the Commission are without evidentiary support or are arbitrary or capricious as a matter of law. *Hamm v. South Carolina Public Service Comm'n*, 294 S.C. 320, 364 S.E. (2d) 455 (1988).

This Court has defined substantial evidence as

'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' . . . This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.

*Hamm v. South Carolina Public Service Comm'n and Wild Dunes Utilities, Inc.,* — S.C. —, 422 S.E. (2d) 118, 120 (1992) [quoting *Lark v. Bi-Lo, Inc., supra*].

We address first the issue of whether Pipeline is entitled to recover from its customers the full amount of TOP charges. The circuit court found that TOP costs do not reflect purchased gas costs. Based upon its reasoning that TOP charges arise out of a failure to purchase gas, the court concluded there was no basis in fact or in law which would mandate their recovery through a purchased-gas expense recovery mechanism.

Appellants Commission and Pipeline argue that TOP costs approved by the Federal Energy Regulation Commission (FERC) may be treated as cost of gas under Pipeline's tariff and recovered from Pipeline's customers. We agree.

Mandated FERC rates may be passed on to customers pursuant to the filed-rate doctrine, a federal preemption rule which requires states to accord binding effect to filed rates approved by the FERC. *See General Motors Corp. v. Illinois Commerce Comm'n,* 143 Ill. (2d) 407, 158 Ill. Dec. 537, 574 N.E. (2d) 650 (1991); *Mississippi Power and Light Co. v. Mississippi,* 487 U.S. 354, 108 S.Ct. 2428, 101 L.Ed. (2d) 322 (1988); *Nantahala Power and Light Co. v. Thornburg,* 476 U.S. 953, 106 S.Ct. 2349, 90 L.Ed. (2d) 943 (1986).

Local gas companies are permitted to pass on to customers TOP charges if such charges are neither illegal, arbitrary nor unreasonable. *General Motors Corp. v. Public Service Comm'n of Maryland,* 87 Md. App. 321, 589 A. (2d) 982 (1991). Additionally, the Commission must authorize sufficient revenue to afford utilities the opportunity to recover expenses and the capital cost of doing business. *Southern Bell Telephone and Telegraph v. South Carolina Public*

*Service Comm'n,* 270 S.C. 590, 244 S.E. (2d) 278 (1978).

The record shows that the Commission considered evidence from Pipeline, Consumer Advocate, Piedmont, SCEUC, SCE&G and the Commission staff. Pipeline sought approval to add a levelized amount of 45¢ per dekatherm (dt) to its monthly cost charged to its sale for resale and certain direct industrial customers. Pipeline asserts that such levelized charge would be less disruptive and more equitable than the existing approved purchased gas adjustment under which monthly sales volume variations produced fluctuations in its weighted average cost of gas from a mid-winter low of 16¢ per dt. to a midsummer high of $1.15 or more per dt.

The Commission found that because the rates and surcharges Pipeline pays for gas are federally approved and imposed as a cost of gas, the Commission was bound to allow Pipeline to recover from its South Carolina customers Pipeline's full gas costs in the absence of a Commission finding of imprudent purchasing practices. Specifically, Pipeline's existing tariff provisions permit Pipeline to pass on to its customers all costs and surcharges imposed on gas purchased from intrastate pipelines. Moreover, the record reflects no challenge by any party as to the prudency of Pipeline's purchasing practices.

We conclude that the record evinces substantial evidence to support the Commission's findings that Pipeline is entitled to recoup TOP costs in full and that, with regard to this issue, the record reflects neither arbitrariness nor capriciousness as a matter of law.

We next consider whether the Commission's method of allocating TOP costs among Pipeline's customers is proper. The circuit court found that the deficiency-based portion of the Commission-authorized allocation constituted retroactive rate making. We agree.

The Commission adopted a 50% volumetric and 50% deficiency-based collection methodology, a combination of the collection methods supported by the parties. Under the volumetric system, TOP liability is reasonably apportioned according to the degree to which individual customers have benefitted from the recent restructuring of the natural gas industry. A deficiency-based allocation ascribes TOP liability according to

the reasonable measure of an individual customer's responsibility for the incurrence of such costs.

The commission-approved method allowed Pipeline to prepay its lump sum direct bill liability and charge interest on the prepaid amounts pending collection. Ultimately, the volumetric provision would require Pipeline's customers to pay a surcharge on each unit of gas purchased by them in the future. The deficiency aspect would permit the allocation of TOP charges based on the customers' gas purchase "deficiencies" during the period 1982-1986 as compared with their 1981 purchases.

Appellants contend TOP costs are current and that the Commission's decision established a mechanism to recover Pipeline's current costs. Appellants argue further that demand costs have customarily been assessed on the basis of past events and peak demand for the allocation of current costs of service.

We find persuasive the reasoning of the United States District Court in *Associated Gas Distributors v. FERC*, 893 F. (2d) 349, 355 (D.C. Cir. 1989), *reh'g denied*, 898 F. (2d) 809 (D.C. Cir. 1990), *cert. denied, sub nom.; Berkshire Gas Co. v. Associated Gas Distributors*, — U.S. —, 111 S.Ct. 277, 112 L.Ed. (2d) 232, 233 (1990). There the Court determined that "the relevant question is not which costs are current and which are past. Rather, the appropriate inquiry seeks to identify the purchase decisions to which the costs are attached."

S.C. Code Ann. § 58-5-240 (Cum. Supp. 1990) requires a public utility to have rates filed and approved by the Commission prior to implementation of such rates; the intent being to insure that customers know prior to purchase what rate is charged.

The Commission asserts that the deficiency method was approved by the FERC. However, in *Associated Gas Distributors, supra*, the United States Court of Appeals for the District of Columbia held that the deficiency allocation method approved by the FERC violates the filed-rate doctrine and constitutes retroactive rate making.

Appellants seek to distinguish this controversy by arguing that respondents were put on notice through Pipeline's tariffs, which permitted recovery of TOP costs as costs of gas.

Even if notice to the respondents of the potential for TOP

liability solved any conflict with the filed-rate doctrine, it cannot be argued that such notice apprised of any rate and method of recovery, or that retroactive recovery would be permitted. Pipeline's customers were entitled to rely on the contractual rates in effect at such time in the past as they chose to purchase or refrain from purchasing gas. This Court finds the deficiency-based collection methodology for recoupment of TOP charges to be arbitrary and capricious as a matter of law.

Accordingly, we reverse the circuit court's holding that, in toto, the findings of the Commission are without evidentiary support and are arbitrary and capricious as a matter of law. We reinstate so much of the Commission's order as holds that Pipeline is entitled to recover from its customers 100% of its FERC-approved TOP costs.

We affirm so much of the circuit court's order as finds that a deficiency-based levelized charge to customers for TOP costs is prohibited in that it constitutes retroactive rate making. The issue of methodology for recoupment of FERC-approved TOP charges is reversed and remanded to the Commission for reconsideration consistent with the order of the circuit court.

Affirmed in part; reversed in part.

HARWELL, C.J., CHANDLER and TOAL, JJ., and JOHN P. GARDNER, Acting Associate Justice, concur.